544 A.2d 985

Malcom L. PLASTERER, Appellant,

v.

Paul PAINE, Jr. and Liberty Fire Company
Marching Club, Appellee.

Malcolm L. PLASTERER, Appellee,

v.

Paul PAINE, Jr. and Liberty Fire Company Marching Band
Appeal of: Liberty Fire Company Marching Band.

Superior Court of Pennsylvania.

Argued Feb. 4, 1988.

Filed June 28, 1988.

James T. Reilly, Lebanon, for appellant (at 409) and appellee (at 422).

Bradford H. Charles, Lebanon, for appellee (at 409) and appellant (at 422).

Before CAVANAUGH, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

These are cross appeals from an Order entered on June 19, 1987, in the Court of Common Pleas of Lebanon County, Civil Division. Plaintiff-appellant, Malcolm L. Plasterer, appeals from the order granting defendant-appellee's Liberty Fire Company Marching Club's, motion for judgment non obstante veredicto, (hereinafter referred to a "judgment n.o.v."). In addition, in the event that this Court determines that the lower court erred in granting appellee's motion for judgment n.o.v., appellee appeals from that portion of the order which rules adversely to it. We affirm.

Appellant sued appellee for personal injuries sustained when Paul Paine, Jr., assaulted him inside a barroom operated by appellee. As the result of Paine's blow, appellant suffered total loss of vision in his left eye. Both appellant and Paine were members of appellee at the time of the assault. Appellant offered evidence at trial to establish that appellee was aware of Paine's mental disabilities and propensity for violence from the time of his admission and that Paine should not have been permitted to frequent the Club.

A jury trial was held before the Honorable John Walter. In a trifurcated proceeding, Paine was found liable for his assault upon appellant, and appellee was found 60% negligent in causing appellant's harm. The jury awarded appellant damages in the amount of $290,000.00. Post-trial motions and supplemental post-trial motions were filed. The lower court granted appellee's motion for judgment n.o.v. and denied its motion for new trial. This appeal followed.

Appellant presents four issues for our review on appeal: (1) Where grounds for post-trial relief filed by appellee were not asserted in pre-trial proceedings, at trial or in a motion for post-trial relief, may such grounds be relied upon by the trial court in granting the relief; (2) Where an association undertakes to govern the conduct of its membership, is the negligence of the association and/or that of its officers and employees imputed to a passive member of the association who was injured while passively socializing at the association's bar; (3) When a plaintiff who is a passive member of an association is injured as a result of the negligence of the association and/or that of its officers and employees, is plaintiff a member of the public under Restatement of Torts Second, Section 344, such that landowner liability can attach to the association; and, (4) If the court finds that appellant was not a "business invitee" because he was a Club member, could the jury have found appellee negligent on general negligence principles.

With regard to issue one, we disagree with appellant's contention that the lower court erred in granting judgment n.o.v. on an issue which had never been raised before it. A careful study of the record shows that appellee consistently argued at trial and in post-trial motions that appellant could not recover since he was a member of appellee rather than a member of the public, as appellant contends. Following the conclusion of appellant's case in chief, appellee requested that the case be dismissed based upon the "member of the club" argument.[1] Appellee argued that appellee's

1. Counsel used the term "demurrer" instead of "compulsory non-suit", in requesting the dismissal of the suit for lack of evidence. In *Vernon*

knowledge of Paul Paine's propensity for violence must be imputed to appellant, as a member of the Club. Appellee again raised the "member of the club" issue in his post-trial motions. Thus, although appellee did not use the words "imputed negligence", we find that the lower court was sufficiently alerted to the existence and importance of the issue. *Accord Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977).

Next, appellant argues that the lower court erred in granting the judgment n.o.v. based on the "imputed negligence" of appellant as a member of appellee. Appellant contends that, where an association undertakes to govern the conduct of its membership, the negligence of the association and/or that of its officers and employees should not be imputed to a passive member of the association who was injured while passively socializing at the association's bar. Under those circumstances, appellant contends that the member of the association should be considered a member of the public pursuant to Restatement Second of Torts, Section 344, such that landowner liability attaches to the association.

In the instant case, appellant was a member of Liberty Fire Company Marching Club (appellee), a non-profit unincorporated association located in Lebanon County, whose goal is to promote the welfare of the Liberty Fire Company and to provide a place for members to socialize. Only members of the Liberty Fire Company are eligible for membership in appellee.

Appellee maintains a barroom where alcohol is served to members only. On October 23, 1982, appellant was having a beer and socializing with other members in the barroom when Paul Paine, Jr., entered the barroom with a tray of

*D. Cox & Co., Inc. v. Giles,* 267 Pa.Super. 411, 413 n. 2, 406 A.2d 1107, 1109 n. 2 (1979) this Court held:

> The demurrer to the evidence in civil actions is rarely resorted to in modern practice, having been all but superseded by the motion for compulsory non-suit. Nevertheless, it has been held that the two procedures are in practical effect identical. See *Stinson v. Smith,* 329 Pa. 177, 196 A. 843 (1938); 6 Standard Pennsylvania Practice 357–58 (1960).

meat for the kitchen from a local delicatessen. Paine set the tray down at the end of the bar and walked to the other end in order to use the phone. As the result of some sort of interaction which then took place between appellant and Paine, the exact nature of which is unknown, Paine struck appellant in the left eye with his fist. Due to Paine's action, appellant suffered a total loss of vision in the eye.

■ After careful study, we find that Pennsylvania law still relies on the general rule that:

> ... the members of a unincorporated association are engaged in a joint enterprise, and the negligence of each member in the prosecution of that enterprise is imputable to each and every other member, so that the member who has suffered damages * * * through the tortious conduct of another member of the association may not recover from the association for such damage." (Anno. 14 A.L. R.2d 473–474.)

In *Roschmann v. Sanborn*, 315 Pa. 188, 172 A. 657 (1934), members of an unincorporated fraternal association participated in a social outing in a bus owned by the association. During the trip, the bus was negligently operated, and a member was injured. The member brought suit against the organization through its trustees. A verdict was entered in favor of the plaintiff, but the lower court entered judgment n.o.v. based upon the fact that the plaintiff was a member of the association. On appeal, the Pennsylvania Supreme Court held that, since the trip was a joint enterprise, the plaintiff could not recover because the negligence of the bus driver was imputed to the member in question the same as to all the other members of the organization.

Moreover, *De Villars v. Hessler*, 363 Pa. 498, 70 A.2d 333 (1950), plaintiff had been a member of an unincorporated fraternal association which operated a food concession stand at the county fair. Plaintiff who was helping with the preparation and dispensing of the food was injured when a propane gas steam table exploded while she was attempting to light the burners. Plaintiff sued the associa-

tion, its officers and several of its members, but the lower court entered judgment on the pleadings for the defendants. The Supreme Court once again held:

> Being thus cooperatively engaged with those who were allegedly guilty of negligence she became subject to the legal principle that where persons join in the prosecution of a common enterprise there is thereby created a mutual relationship of agency among them, with the result that the negligence of any of them is imputed to each and all of them. Since, therefore, the negligence of which she complains is legally imputed to herself, she cannot recover from the association or from any of its members, other than, as already stated, the individuals who actually committed the tort which caused her injuries.

*Id.*, 363 Pa. at 500–501, 70 A.2d at 335.

Finally, in *Bowser v. Hershey Baseball Association,* 357 Pa.Super. 435, 516 A.2d 61 (1986), this Court reached the same results as that reached by the Supreme Court in *Roschmann v. Sanborn,* supra, and *De Villars v. Hessler,* supra. In *Bowser v. Hershey Baseball Association,* supra, a member of an unincorporated, non-profit association brought suit against the association for injuries received during baseball tryouts for the organization's baseball program. The plaintiff argued that the association had undertaken the task of running the tryouts for him and that he had been a client or customer, i.e., a business invitee at the time of the accident. The lower court entered a compulsory non-suit. On appeal, this Court ruled:

> The record clearly discloses that Bowser was not a client, customer or invitee of the association. Instead, he was one of the members of the association and was actively engaged in organizing and conducting tryouts for teenagers who wished to be a part of the association's baseball program. Thus, he was one of the joint entrepreneurs who were in possession of the ballfield and actively engaged in conducting the very activity which caused his injury. If the activity were conducted negligently by allowing the batter to hit from a spot in front of the

backstop, as appellant contends, that negligence must also be imputed to him.

357 Pa.Super. at 440, 516 A.2d at 63.

Thus, we find that Pennsylvania law is clear on its following of the general rule that members of an unincorporated association may not recover from the association in tort because the negligence of a member, including the association and its officers, is imputed to all of the members. We agree with the lower court that even though the two leading Supreme Court cases "arise out of circumstances where the injured party was actively engaged in a particular association project," it is apparent from the cases cited by the Supreme Court in its opinion that its decisions did not rest on such narrow ground. (Opinion, p. 13). In *De Villars v. Hessler*, supra, the Supreme Court cited the following cases:

In *Koogler v. Koogler*, 127 Ohio St. 57, 186 N.E. 725, plaintiff, a pedestrian on the street, was struck by a fire escape falling from a building. He was a member of the fraternal unincorporated association which owned the building and which had negligently failed to inspect the fastenings of the fire escape. He was denied the right of recovery, the court stating, 127 Ohio St. at pages 62, 63, 186 N.E. at page 727, that "If the lodge owns its real estate, one member owns just as much as another; * * * It is equally the duty of all members to work for the success of the association. They labor toward a common end. Their interests, their purposes, their privileges, in fact all their activities, are joint. Then must it not necessarily follow that the lodge is a joint enterprise, and that as between those engaged therein there is no liability for tort? Such is the holding of this court."

In *Hromek v. Gemeinde*, 238 Wis. 204, 298 N.W. 587, the plaintiff, a member of an unincorporated labor union, was injured by falling over a platform which had been allowed to remain in an improper and unsafe position. He brought suit, naming the union as one of the defendants; the appellate court reversed a judgment against the

union saying 238 Wis. at pages 209, 210, 298 N.W. at page 589, "It [the association] has no entity or existence apart from that of its members, although for convenience it is permitted that the group comprising the union be sued in the name adopted by the association. This is a procedural provision and does not in any way change the status of the group or its substantive liabilities. * * * It is the well-established law that while a principal may sue an agent for dereliction of duty, he may not sue his co-principals for the dereliction of their common agent. * * * 'It is true that both these bodies [the executive committee and a sub-committee of the union] were appointed by the general body of members, and as such they are the agents of the members; but they are just as much the agents of the plaintiff as the agents of his fellow members whom he seeks to make liable under their collective name.' "

363 Pa. at 501–02, 70 A.2d 335–36. In *Roschmann v. Sanborn,* supra, the Supreme Court held:

If two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to all the others.

315 Pa. at 192, 172 A. at 658 (Quoting; *Koplitz v. St. Paul,* 86 Minn. 373, 90 N.W. 794, 58 L.R.A. 74, 75).

In addition, in *Marshall v. International Longshoremen's and Warehousemen's Union,* 57 Cal.2d 781, 22 Cal.Rpter. 211, 371 P.2d 987, 988 (1962), the California Supreme Court listed *Roschmann,* supra, and *De Villars,* supra, in its list of typical cases following the imputed negligence rule:

This precise question has not been previously litigated in the courts of this state but has been the subject of decision in the courts of several other jurisdictions, and they appear to have followed the general rule of nonliability of the unincorporated association in an action for

negligence by one of its members. Typically the cases have involved fraternal organizations or beneficial associations: *Carr v. Northern Pac. Beneficial Ass'n*, (Wash. 1924) 128 Wash. 40, 221 P. 979 (negligent selection of physicians and negligent hospital care furnished); *Koogler v. Koogler* (Ohio 1933) 127 Ohio St. 57, 186 N.E. 725 (negligent maintenance of fire escape); *Roschmann v. Sanborn* (Pa.1934) 315 Pa. 188, 172 A. 657 (negligent operation of a bus); *De Villars v. Hessler* (Pa.1950) 363 Pa. 498, 70 A.2d 333, 14 A.L.R.2d 470 (negligent operation of a steam table); *Mastrini v. Nuova Loggia Monte Grappa* (Pa.1954) 1 Pa.Dist. & Co.2d 245 (negligent maintenance of lodge's floor); *Duplis v. Rutland Aerie, No. 1001, etc. Eagles* (Vt. 1955) 118 Vt. 438, 111 A.2d 727 (negligent maintenance of stairway).

Appellant contends that there has been a trend in the nation's courts away from the rule of non-liability of unincorporated associations in actions for the negligence of their members. He presents a series of cases which show the gradual movements of the courts away from the theory. Citing the *De Villars* case in 1950 as "the last pronouncement of the Supreme Court which specifically addresses the issue," appellant believes that the law should be changed in order to keep in step with the states which have altered the rule. However, we find the rule concerning the imputed negligence of unincorporated associations as stated by the Pennsylvania Supreme Court in *Roschmann*, supra, (1934) and in *De Villars*, supra, (1950) to still be good law in Pennsylvania today. In *Mohn v. Hahnemann Medical College and Hospital of Philadelphia*, 357 Pa.Super. 173, 176–77, 515 A.2d 920, 922 (1986), this Court held:

At the outset, be it known that, regardless of the vintage of a case or its attack by legal scholars in their erudite treatises on the state of the law, in the final analysis it is for the highest court in this jurisdiction to decide when and to what extent, if any, a case has lost its vibrancy so as to signal its demise. No trial court is to usurp this function under the guise of changes presaged by the

winds of judicial time, marked by the shifting tides of legal thinking. See Concurring Opinion of Chief Justice Nix in *Commonwealth v. Brady*, 510 Pa. 123, 134–36, 507 A.2d 66, 72 (1986) ("Regardless of how laudable the trial court's intentions may ... be[ ], ... it unauthorized refusal to apply existing law cannot be tolerated. To permit such a practice will throw the administration of justice and the expectations of litigants into utter confusion.")

Thus, like a trial court, this Court is also not permitted to usurp the function of the Pennsylvania Supreme Court. Therefore, the law on the imputed negligence of unincorporated associations will remain the same until the Pennsylvania Supreme Court addresses the issue.

In *Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355, 356 (1963), the Pennsylvania Supreme Court held:

> In considering a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom, are considered in the light most favorable to the verdict winner.

In the instant case, the record shows that appellant is a member of appellee, an unincorporated association. In viewing the evidence in a light most favorable to the appellant, although the record shows that appellant presented sufficient evidence that appellee knew or should have known that Paine was likely to commit an assault due to his mental disabilities and propensity, appellant's case must fail since the negligence of the Club and its officers is imputed to its members. See also *Selected Risks Ins. Co. v. Thompson*, 363 Pa.Super. 34, 39, 525 A.2d 411, 413 (1987) (unincorporated associations have no existence separate and apart from its individual members).

In the case at bar, Appellant argues that, although a member of appellee, he was not actively engaged in an association project at the time of his injury. He further contends that he exerted no control over appellee and its affairs but rather stopped in occasionally for a drink. Thus, appellant argues that, since there is no common enterprise underway at the time of his injury and he did not

exert any control over appellee, he should be viewed as a client, customer or business invitee, i.e., a member of the public under Restatement Second of Torts, Section 344, such that landowner liability attaches to the association. Section 344 provides:

A possessor of land who *holds it open to the public* for entry for his business purposes is subject to liability to *members of the public* while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect against it. (emphasis added)

However, the record clearly shows that the appellant was not a client, customer or invitee of appellee at the time of his injury. We agree with the lower court that appellant was "... one of the members of the Club partaking of a Club benefit and enterprise; the running of a canteen or barroom where members can socialize and from which the organization can potentially realize drink sale profits to fund future Club projects or donations." (Opinion, p. 17). The lower court explained:

As a member of the Club, Plaintiff has a proprietary interest in the Club and the premises in which it is located. Profits generated by alcohol sales in the bar contribute toward Club goals. The bar area was provided so members would have a place to socialize; a place where members could stop in after work and have a drink with other members. Each member of the Club has an equal voice in the control of the Club and barroom. As a practical matter for the convenience of all however, the right of each member to direct or control the club is delegated to the elected officials, as provided in the

bylaws. The fact that Plaintiff did not attend meetings or exercise his right of control is irrelevant.

(Opinion, pp. 16–17).

On the other hand, a member of the public has no proprietary interest in the business he enters. In addition, a member of the public has no control over how a business is operated or who enters the business establishment.

Moreover, we agree with the lower court that, viewing the facts in the light most favorable to the plaintiff, they do not establish that appellee's barroom is open to the public. Appellee has established strict rules to keep the public out unless in the company of a member or specifically invited to a Club fund raising function. The lower court stated:

> In the case at bar, the Club house rules and bylaws clearly state that women and minors are not allowed in the Club building. Members are allowed one guest but the guest cannot make a purchase and must leave when the member leaves. The front door of the Club is locked and only members have keys. If members forget their keys, they may ring the side door for admittance, but only the steward or officers are permitted to open the side door. Members are issued membership cards which the steward can demand to see before service.

(Opinion, pp. 18–19).

Thus, we find that the evidence shows that appellant was a member of appellee at the time of his injury and not a member of the public. As such appellee has no right of recovery under the Restatement Second of Torts, Section 344.

Rather, we find that, under current Pennsylvania law, appellant, as a member of an unincorporated association may not recover from the association in tort because the negligence of a member, including the association and its officers, is imputed to all of the members. *Roschmann v. Sanborn*, supra; *De Villars v. Hessler*, supra; *Bowser v. Hershey Baseball Association*, supra.

Order affirmed.[2]

**2.** In light of our determination, there is no need for this Court to decide appellee's cross appeal.